DOYLE v. REID.

(Supreme Court, Appellate Division, First Department.　August 10, 1898.)

1. SUBSCRIPTIONS—RIGHTS OF COMMITTEE—APPROPRIATION OF FUNDS.

　　A loosely constituted committee was formed in 1872, of which the defendant was a member, to raise a fund for a statue to Horace Greeley, to be placed in some appropriate location.　The defendant and his newspaper had already collected money for that purpose.　After a short time the project was practically abandoned by the committee, and defendant proceeded on his own responsibility to complete the fund, including what he had collected, and contracted with J. Q. A. Ward for a statue, which, in September, 1890, was unveiled, in Printing House Square.　In 1889 two survivors of the committee, with two new associates, contracted for a statue with the plaintiff, who then knew what the defendant had done, and they undertook to assign to him the moneys originally collected by the defendant.　*Held,* in an action to recover the same, that neither the committee nor the plaintiff was entitled to call him to account.

2. DIRECTING VERDICT.

　　The defendant was examined as a witness for the plaintiff, and testified fully; and when all the plaintiff's testimony was in, and he rested, the defendant moved for the direction of a verdict, which was granted.　*Held,* no error.

Appeal from trial term, New York county.

Action by Alexander Doyle against Whitelaw Reid.　From a judgment entered on a verdict directed at the close of plaintiff's case, he appeals.　Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

Robert L. Stanton, for appellant
Selden Bacon, for respondent.

O'BRIEN, J.　This action arises out of the erection in the city of New York of two memorial statues of Horace Greeley,—one designed by John Q. A. Ward, standing in Printing House Square, in front of the Tribune Building; and the other designed by the plaintiff, and erected at Thirty-Third street and Broadway.　Certain sums contributed for the purpose of the Greeley Memorial were expended by the defendant on the Ward statue, which the plaintiff now claims should be paid a second time to him, to apply upon the Doyle statue. It appears that in December, 1872, certain persons formed a committee to raise a fund for a statue to Horace Greeley, one of the members of which was the defendant, who had succeeded Mr. Greeley as editor of the Tribune.　In January, 1873, the committee met and elected William W. Niles chairman, Andrew H. Green treasurer, and Edmund C. Stedman secretary.　For some time before the formal organization of the committee, the members and persons interested in the matter received subscriptions to the fund.　There is no dispute but that the defendant or the Tribune received $2,928, and that such sum was appropriated, with a great deal more, to pay the expenses of the Ward statue.　It is insisted, however, that this was done wrongfully, and that the defendant had no right or authority to appropriate it for any such purpose.　It appears that, after the committee (which was very loosely formed) had obtained some subscriptions, it was prevented

from obtaining the full amount by the financial panic of 1873; and, according to the testimony of the plaintiff's witness Mr. Niles, they gave up the project, not later than the winter of 1873–74, and did not take it up again until the fall of 1887, 14 years later; and when they gave it up, in 1873–74, the amount of subscriptions collected or moneys available for the purpose were inadequate to meet the expense of a suitable statue, the treasurer having less than $4,000 in hand. After the committee apparently had abandoned the project, the defendant went ahead, and as early as 1875 or 1877 brought the subject to the attention of Mr. Ward, and asked him to prepare plans, at first guarantying to pay $10,000, and some time later $13,500, in addition to the cost of the pedestal. There was considerable delay in Mr. Ward's getting the statue underway and completing it, which, however, he finally did, and it was unveiled in Printing House Square on the 22d day of September, 1890. In 1887, Mr. Niles called a meeting of the survivors of the committee, at which were present, of such survivors, only Mr. Niles and Gen. Cochrane; and a Mr. Smith, who was not a member of the original committee, also attended. Subsequently, James Q. Howard was made a member of the committee, either as an addition or by way of substitution for Mr. Smith; Mr. Niles testified he was unable to state which. No one else was added, and the committee continued, so far as taking any active part in the work is concerned, with either three or four members. In April, 1889, the plaintiff entered into a contract, on which he bases his claim to recover from the defendant, to erect the statue which was placed at Thirty-Third street and Broadway, in 1894. At the time he entered into the contract, he was cognizant of the fact that the defendant had entered into a contract with Ward; for in his letter to the defendant under date of March 8, 1890, he says: "They [referring to the Printers' Committee] showed me your letter in which you stated that a contract had already been made with Mr. Ward covering the amount in your hands." Notwithstanding such knowledge on his part, the plaintiff entered into a contract to make, and subsequently completed, a statue, which, as stated, was erected at Thirty-Third street and Broadway. This contract executed by and on behalf of the committee brought together in 1887 contained assignment of the amounts collected by the defendant.

The question, apart from the validity of the assignment to the plaintiff, narrows down to a consideration as to whether the committee of which Mr. Niles was chairman had such control over and title to the moneys collected by the defendant that they could compel him to account or pay over the same to any one whom they might designate. If a project is stated even by a voluntary association or by some individuals to collect money for a particular statue, to be erected at a particular place, then there might be some force in the suggestion that one receiving contributions for the particular purpose as a member of such committee could not apply them for the erection of a different statue at a different place. What the gentlemen composing the committee intended to accomplish was the erection of a statue to Mr. Greeley in some suitable place not designated, though Printing House Square was favorably considered. Although upon the reor-

ganization of the committee, in 1887, a different site was selected, this is not conclusive against the action taken in the meantime by the defendant. The original committee had practically disbanded in 1873, with the project unfinished, and leaving but one person, the defendant, who, on his own responsibility, undertook to successfully carry it out, making himself liable for many thousands of dollars in excess of any sums that he had received as subscriptions. The defendant therefore having entered into obligations looking towards the carrying out of the intention of the subscribers to the fund, we do not think it was competent for two members of the original committee, 14 years afterwards, to arrogate to themselves the right and authority to undo all that the defendant·had done at great personal expense. We fail to find any principle upon which the committee of 1887 or the plaintiff obtained any title to the moneys in the hands of the defendant. The only one seemingly having the right to question the disposition thereof would be the persons who originally made the subscriptions. Two thousand dollars of the money received by the defendant and the Tribune consists of two subscriptions. The evidence shows that the mode in which such subscriptions were to be applied was left to the discretion of the defendant, and there was no proof that any of the subscribers to the $900 objected to the disposition made, the fair inference from the testimony being that, before such sums were added to the defendant's own for the Ward statue, he caused notices to be sent to the donors, and, as they did not dissent from the proposed appropriation, they must be held to have ratified and approved the defendant's acts. It would be a most unwarranted inference upon the facts, and against every rule of law, to conclude that the committee in 1887, after the appropriation had been made, could confer upon the plaintiff title to moneys pursuant to an assignment contained in a contract, after the plaintiff had full knowledge that the moneys had been devoted to the erection of the Ward statue,— a purpose for which, at the time the appropriation was made, the defendant had a right to apply them. We think, therefore, that, upon the facts appearing, the defendant was entitled to a dismissal of the complaint.

The defendant was examined as a witness for the plaintiff, and gave his testimony fully as to the matter in controversy; and when this, together with all the rest of the plaintiff's evidence, was in, he rested. Thereupon the defendant moved for a direction of a verdict. It is contended that, as the defendant did not go into his case, the granting of such motion, which involved a conclusion upon the merits, was improper. It must be recalled that the defendant had, as a witness for the plaintiff, been fully interrogated on his direct and cross-examination. By the motion made for a direction, the plaintiff had notice that the defendant, having had the benefit of the defendant's evidence, also rested, thus presenting to the court the question of law upon the evidence as to whether he was or was not entitled to a direction. If that motion had been denied, it would not have been competent for the defendant to introduce further evidence, without leave of the court. It is true that the plaintiff gave no evidence in rebuttal, but it does not appear that he so desired, as no request was made to be

allowed to introduce any such rebuttal evidence. The case thus stood practically in the position that both sides had presented their evidence, and rested.

The motion for a direction of a verdict could therefore be properly entertained and decided by the court. Of course, the question remained, and has been fully examined on this appeal, whether the ruling made by the court thereon was right. We think it was, and that the judgment entered thereon should be affirmed, with costs. All concur.